**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02592-NYW

WILLIAM J. LAURIENTI,

      Plaintiff,

v.

REGGIE BICHA,
KATHY NESBITT,
PAULETTE ST. JAMES, and
SANDRA ANDERSON, each in their individual capacities,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on Defendants Reggie Bicha, Kathy Nesbitt, and Paulette St. James' (collectively, "State Defendants") Motion to Dismiss Second Amended Complaint ("State Defendants' Motion to Dismiss"). [#56, filed May 1, 2015]. Also before the court is Defendant Sandra Anderson's ("Defendant Anderson" or "Ms. Anderson") "Motion for Dismissal of the Second Amended Complaint Pursuant to F.R.Civ.P. 12(b)(1) and F.R.Civ.P. 12(b)(6)" ("Defendant Anderson's Motion to Dismiss"). [#57, filed May 8, 2015].

      These Motions are before this court pursuant to the Order of Reference dated January 28, 2015 [#41], the Order of Reassignment dated February 10, 2015 [#44], 28 U.S.C. § 636(c), and D.C.COLO.LCivR 72.2.   The court has reviewed the matter, the entire case file, and the

applicable law and is sufficiently advised as to the issues presented.  For the following reasons, the Motions to Dismiss are GRANTED.

## BACKGROUND

### I.    Procedural Background

Plaintiff William J. Laurienti ("Plaintiff" or "Mr. Laurenti") and his wife, Patricia A. Laurienti ("Ms. Laurienti") (collectively, "the Laurientis"), commenced this action on April 7, 2014 by filing a civil complaint in the Northern District of Georgia seeking damages pursuant to 42 U.S.C. § 1983.  On September 8, 2014, the Northern District of Georgia transferred the matter to the District of Colorado pursuant to 28 U.S.C. § 1406(a).  [#1].  Following the transfer to this District, the Laurentis filed an unopposed Motion to Amend their Complaint and the First Amended Complaint was entered on the docket on January 6, 2015.[1]  [#28, #34].  The Laurientis asserted four claims for the violation of their constitutional rights under the Fourth and Fourteenth Amendments and one claim for *respondeat superior* liability, arising from the allegedly unlawful garnishment of Mr. Laurienti's Social Security Income and the expropriation of tax refunds belonging to Ms. Laurienti.  [#34].  The Laurientis sought declaratory and injunctive relief along with compensatory and punitive damages.

At a status conference held on January 7, 2015, the Parties consented to the jurisdiction of a United States magistrate judge and orally moved for a stay of discovery pending resolution of the motions to dismiss that Defendants then intended to file.  [#37, *see also* "Consent to Jurisdiction of Magistrate Judge," #38].  The State Defendants filed a motion to dismiss on

---

[1] The First Amended Complaint omitted as defendants the Colorado Child Support Enforcement Division and the Mesa County Child Support Enforcement Unit, but did not alter Plaintiffs' substantive claims. *Compare* [#3] *with* [#28].

January 7, 2015 [#25], and Defendant Anderson filed a motion to dismiss on January 23, 2015. [#40].  This action was reassigned to the undersigned Magistrate Judge on February 10, 2015. [#44].

The Laurientis thereafter, and following two extensions of time to respond to the motions to dismiss, filed a Motion to Amend.  [#47].  The State Defendants and Defendant Anderson each filed Responses opposing the Motion to Amend on the basis of futility.  [#49, #48].  On April 10, 2015, this court granted the Motion to Amend and denied the then-pending motions to dismiss as moot, finding that it was more appropriate to consider whether Plaintiff stated viable claims through a motion to dismiss, rather than futility, analysis.  [#50].

The Second Amended Complaint omits Patricia Laurienti as a plaintiff, adds Mesa County as a defendant,[2] and asserts the following claims arising under 42 U.S.C. § 1983: (1) unlawful search and seizure of Plaintiff's social security income as to Defendant Anderson; (2) unlawful garnishment in violation of Plaintiff's due process rights as to Defendant Anderson; (3) failure to train and supervise as to the State Defendants; and (4) failure to train and supervise as to Mesa County.  [#51].  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief to the effect that Plaintiff has paid his child support obligation in full.

## II.    Factual Background

The following facts are taken from the Second Amended Complaint and exhibits attached thereto and are considered true for the purposes of this Recommendation and of the court's

---

[2]  Mesa County waived service, and on April 15, 2015, indicated its consent to the jurisdiction of a magistrate judge.  [#55].  As discussed below, Plaintiff subsequently voluntarily dismissed Mesa County as a defendant, thereby leaving the four original Defendants sued in their respective individual capacities on three claims.  [#62].

review of the Motions to Dismiss.[3]  Before moving to Georgia, Plaintiff received a divorce from his former wife, Mary R. Laurienti, in the District Court for the City and County of Denver, Colorado in August 1982.  [#51 at ¶ 13; #47-3 at 1].  Pursuant to a court order arising from that proceeding, Plaintiff was required to pay $450.00 a month in child support for his two, then-minor children ("Colorado Order").  [#51 at ¶ 14; #47-3 at 2].

Sometime thereafter, Mary Laurienti obtained public benefit payments and assigned the right to collect the child support payments to the State of Colorado.  *See* 42 U.S.C. § 608(a)(3).  In late 1996 or early 1997, the Colorado Child Support Enforcement Division ("Colorado CSED") of Mesa County sought, through the Uniform Interstate Family Support Act ("UIFSA"), a Complaint for Enforcement of Foreign Order with the Georgia Department of Human Resources against Mr. Laurienti in the Superior Court of Paulding County, Georgia.  [#51 at ¶ 15; #47-3 at 4].  On January 13, 1997, Plaintiff agreed to a Consent Order with regard to the Colorado Order, in which he acknowledged that he owed $77,280.95 in unpaid child support and agreed to pay $500.00 a month until the sum was paid in full.  [#51 at ¶ 15; #47-3 at 6].

In 2000, Colorado CSED again, through UIFSA, pursued enforcement of the Colorado Order in Paulding County Superior Court, which issued an "Order Recognizing the Out of State Child Support Order that is Controlling for Enforcement and Order of Enforcement" ("Georgia Order").  [#51 at ¶ 16; #47-3 at 8].  Paulding County Superior Court determined that Plaintiff had satisfied his obligation under the Colorado Order because one child had reached the age of

---

[3]  While a court must generally determine the sufficiency of a complaint on its contents alone, *see, e.g., Casanova,* 595 F.3d at 1125, one exception to this restriction is when the plaintiff attaches documents to his complaint as exhibits. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).  The court may consider such documents without converting the motion to dismiss into one for summary judgment.  *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004).

majority and the other child had emancipated herself; but determined that under the Colorado Order, Plaintiff owed $76,049.77 in arrears as of September 30, 2000. [#51 at ¶¶ 17, 18; #47-3 at 8]. Paulding County Superior Court ordered Plaintiff to make payments towards the arrearage through the Georgia Division of Child Support Services ("Georgia DCSS") at a rate of $500.00 a month beginning November 1, 2000. [#47-3 at 9].

In a notice dated October 14, 2001, the Mesa County Child Support Enforcement Unit advised Plaintiff that he owed $173,157.09 in past due child support. [#51 at ¶ 52; #47-3 at 52]. Mr. Laurienti responded to the Mesa County Child Support Enforcement Unit, contesting their calculation of his arrearage and asking for "an administrative review of all payments made to determine if I have been given credit for all payments made to date." [#47-3 at 53]. Plaintiff received word from the Mesa County Department of Human Services via letter dated May 29, 2002, that the Department had conducted an administrative review and determined that he owed $63,883.29 in past due child support. [#47-3 at 56-59].

On October 31, 2002, the Mesa County Child Support Enforcement Unit advised Plaintiff that he owed $167,469.34 in past due child support. [#51 at ¶ 57; #47-3 at 60]. Thereafter, from 2004 through 2012, Mesa County Child Support Enforcement Unit advised Plaintiff in a notice mailed once each year that he "owed substantially more money in child support arrears than he had been ordered to pay in the [Georgia Order]." [#51 at ¶ 57; #47-3 at 60-72].

On August 17, 2012, Mr. Laurienti accessed his Georgia DCSS account, which indicated that he owed $180.05, which he remitted. [*Id.*] When he attempted to log into his Georgia DCSS account the following month he learned that the account had been closed; and he was told

during a subsequent trip to the Georgia DCSS office that his obligation had been satisfied.  [*Id.* at ¶ 21].

Six months later, in March 2013, Mr. Laurienti learned from the Social Security Administration that his Social Security Income would be garnished at a rate of $500.00 a month, "to pay your obligation for child support."  [#51 at ¶ 23].  Plaintiff hired legal representation, who sent a cease and desist letter to the Social Security Administration, along with a copy of the Georgia Order.  [*Id.* at ¶ 25].  In May 2013, Plaintiff received a copy of an order dated March 13, 2013, mailed to the Social Security Administration by Defendant Anderson on behalf of Mesa County Child Support Enforcement Unit, which had triggered the garnishment of his Social Security Income.  [*Id.* at ¶ 26; #47-3 at 12].  Plaintiff's counsel thereafter mailed an ante litem notice to certain Defendants and other parties located in Colorado, pursuant to the Georgia Tort Claims Act.  [#51 at ¶ 27; #47-3 at 22].

On June 19, 2013, Denise Kampf, program manager for the Mesa County Department of Human Resources, wrote Plaintiff a letter, "in response to a Notice of Claim received by the Colorado State Department of Human Services stating you are overpaid in your child support obligation."  [#51 at ¶ 63; #47-3 at 75].  Ms. Kampf advised Plaintiff that, after reviewing the 2002 Administrative Review, she had determined that he still owed $357.74 in child support arrears, but explained that the balance would be waived, the income assignment affecting his social security benefits had been terminated, and all judgments with respect to the Colorado Order were satisfied.  [*Id.*]  The Social Security Administration notified Plaintiff by letter dated June 26, 2013, that the garnishment would cease.  [#51 at ¶ 28; #47-3 at 25].

Plaintiff claims his social security income was unlawfully garnished for three months, resulting in a loss of $1,500.00, which has not been refunded to date. [#51 at ¶ 29]. He further claims that he is entitled to $350,000 in pain and suffering. [*Id.* at 32]. He also seeks punitive damages "based on the reprehensibility of the conduct of Defendants." [*Id.*] Mr. Laurienti also seeks declaratory relief through issue of a final order showing that he has paid his child support obligation in full and owes nothing further to the State of Colorado or any other person or entity for child support. [*Id.* at 31]. Defendant Reggie Bicha is sued in his individual capacity as the Executive Director of the Colorado Department of Human Services. [#51 at 4]. Defendant Kathy Nesbitt is sued in her individual capacity as the Executive Director of the Colorado Department of Personnel and Administration. [*Id.* at 5]. Defendant Paulette St. James is sued in her individual capacity as the Director of the Department of Human Services' Child Support Enforcement Division. [*Id.*] Defendant Anderson is sued in her individual capacity as a paralegal with the Mesa County Child Support Enforcement Unit. [*Id.* at 6].

The State Defendants filed their Motion to Dismiss on May 1, 2015. [#56]. Defendant Anderson filed her Motion to Dismiss on May 8, 2015. [#57]. Plaintiff filed a Response to the State Defendants' Motion to Dismiss on May 22, 2015 [#58], and filed a Response to Defendant Anderson's Motion to Dismiss on May 28, 2015. [#59]. On June 15, 2015, the State Defendants filed a Reply in support of their Motion to Dismiss [#65], and on June 17, 2015, Defendant Anderson filed a Reply in support her Motion to Dismiss [#66].    On June 8, 2015, Plaintiff filed a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(a)(i) as to Mesa County. [#62]. Plaintiff's Fourth Claim for Relief is directed solely at Mesa County [#51 at ¶¶ 67-72], and thus that claim is now moot.

**STANDARD OF REVIEW**

**I.      Fed. R. Civ. P. 12(b)(6)**

Defendant Anderson and the State Defendants argue that Plaintiff fails to state a cognizable claim against them under any theory, including that they are all entitled to qualified immunity because Plaintiff has failed to assert a viable constitutional violation.[4]   Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri,* 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins*

---

[4] Defendant Anderson asserts that she is entitled to qualified immunity, and argues that as a result, dismissal is appropriate pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [#57 at 17-18].  Qualified immunity, however, does not divest the court of jurisdiction.  *See Neal v. Davis*, 475 F. App'x 690, 692 (10th Cir. 2012); *Walker v. Wegener*, No. 11-CV-03238-PAB-KMT, 2012 WL 4359365, at *5 (D. Colo. Aug. 30, 2012) *report and recommendation adopted,* No. 11-CV-03238-PAB-KMT, 2012 WL 4355621 (D. Colo. Sept. 24, 2012) (observing that "contrary to Defendants' interpretation of *Meyer,* other Tenth Circuit decisions plainly hold that, unlike sovereign immunity, qualified immunity is not jurisdictional, but rather a defense on the merits that is properly evaluated under Fed.R.Civ.P. 12(b)(6)").

*v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.     Fed. R. Civ. P. 8(a)

Defendant Anderson and the State Defendants further argue that the Second Amended Complaint violates Federal Rule of Civil Procedure 8. Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The dual purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond, and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The tenet of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Prolix, vague, or unintelligible pleadings violate Rule 8. *See Buhendwa v. Regional Transp. Dist.*, 82 F. Supp. 3d 1259, 1270 (D. Colo. 2015).

**ANALYSIS**

I.     **Applicable Circuit Law**

Each of Plaintiff's remaining three claims arises under 42 U.S.C. § 1983, and thus this matter is before the court pursuant to federal question jurisdiction.  *See* 28 U.S.C. § 1331. Notwithstanding the transfer of this action from the Northern District of Georgia to the District of Colorado, in a matter where jurisdiction is based on a federal question, a federal district court shall apply the law of the circuit in which it sits, unless the issue is one of "geographically non-uniform" federal law.  *Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1544–45 (10th Cir. 1996) (citing *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1126 (7th Cir. 1993)).  A federal law is geographically non-uniform where Congress specifically intended that the application of the law depend on the "geographic location of the events giving rise to the litigation." *Id.*  The Parties do not argue or otherwise indicate that either § 1983 or the UIFSA are geographically non-uniform. Accordingly, the court applies Tenth Circuit law to Plaintiff's claims.

A.     **Section 1983**

Section 1983 allows an injured person to seek damages for the violation of her federal rights against a person acting under color of state law, in his individual capacity.  *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988).  To assert a claim under § 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law.  *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009).  Vicarious or strict liability of a supervisor is inapplicable to § 1983 claims. *Iqbal*, 129 S. Ct. at 1948, 1949 (2009); *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008).  It is well-settled that "[a] defendant cannot be liable under § 1983 unless personally

involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted).

None of the Defendants contest their status as state actors. However, they each assert a defense under the doctrine of qualified immunity. This doctrine "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted). Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

Given Defendants' arguments, this court must first consider whether Plaintiff asserts a viable violation of a "right secured by the Constitution and laws of the United States." *Hall,* 584 F.3d at 864.

1.    *Fourth Amendment*

Plaintiff asserts that his "federal statutory right to receive uninterrupted and whole Social Security Income payments under the Social Security Act" were infringed when his benefits were garnished, resulting in a violation of his Fourth Amendment rights. [#51 at 3, 14]. The Fourth Amendment to the Constitution of the United States of America protects "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In determining whether a Fourth Amendment violation has occurred, courts must "assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." *United States v. Jones,* --- U.S. ----, 132 S.Ct. 945, 950, 181 L.Ed.2d 911 (2012) (alteration in original) (quoting *Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *United States v. McHugh,* 639 F.3d 1250, 1260 (10th Cir. 2011) (quoting *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)). The inquiry into reasonableness is highly fact sensitive:

> [W]e have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.

*United States v. Banks,* 540 U.S. 31, 36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003).

### 2.    *Fourteenth Amendment*

Mr. Laurienti also claims that his due process rights were abridged when his Social Security benefits were garnished. [#51 at 3, 18]. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The Fourteenth Amendment protects citizens from the arbitrary, abusive, or oppressive use of governmental power. *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Due process claims under the Fourteenth Amendment can take the form of a procedural or substantive violation: "procedural due process ensures the state will not deprive a party of property without engaging in fair procedures to reach a decision,

while substantive due process ensures the state will not deprive a party of property for an arbitrary reason." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). In his Second Amended Complaint, Mr. Laurienti appears to assert a violation of both his substantive and procedural due process rights. *See* [#51 at ¶ 43].

To state a due process claim under § 1983, a plaintiff must show "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In evaluating a procedural due process claim, a court must consider "whether the deprivation, if one be found, was visited upon the plaintiff without due process of law." *Hillside Community Church v. Olson*, 58 P.3d 1021, 1025 (Colo. 2002) (citing *Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir. 1987)). As to substantive due process, certain government actions are barred "regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "When an alleged constitutional violation is denial of substantive or procedural due process, the Plaintiff must identify the specific right of which he or she was deprived." *Lowman v. City of Aurora*, No. 10–cv–01259–MSK–MJW, 2012 WL 1269131, at *2 (D. Colo. April 16, 2012). To enjoy a property interest in a government benefit a person must have more than an abstract need or desire for the benefit or a unilateral expectation of receiving it, but instead must have a legitimate claim of entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

### B.    Uniform Interstate Family Support Act

To determine whether any cognizable right held by Mr. Laurienti has been violated, the court considers whether the garnishment was proper under UIFSA.  The Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104–193, 110 Stat. 2105 (1996), "made sweeping changes in social policy relating to low-income people," and, as is relevant here, required states to adopt the UIFSA.  *Kansas v. United States*, 214 F.3d 1196, 1197-98 (10th Cir. 2000) (citing 42 U.S.C. § 666(f)).  "The goal of the UIFSA was to provide mechanisms to address problems, such as multiple or conflicting support orders regarding the same parties and children, that had previously persisted in the interstate enforcement of child support."  *In re Marriage of Zinke*, 967 P.2d 210, 212 (Colo. App. 1998) (citing *People in Interest of R.L.H.,* 942 P.2d 1386 (Colo. App. 1997)).

Colorado and Georgia have each codified the UIFSA.  *See*  Colo. Rev. Stat. §§ 14–5–101, *et seq.*; Ga. Code Ann. §§ 19-11-100 *et seq.*.  A Colorado court that issued a controlling child support order maintains continuing, exclusive jurisdiction to modify the order if, at the time of the modification request, the obligor, the individual obligee, or the child for whose benefit the support order was issued lives in Colorado.  Colo. Rev. Stat. § 14-5-205(a).  *See In re Marriage of Zinke*, 967 P.2d at 212-13 (citing UIFSA, 9 *Uniform Laws Annot.* 272 (1996) (Comment at 285)).  A Colorado court lacks jurisdiction to modify a child support order if the order is not controlling, or if the parties involved consent on the record in the Colorado court that a court of another state, which has jurisdiction over at least one of the parties or is the state of residence of the child, may modify the order.  *Id.* at § 14-5-205(b).  Pursuant to Colo. Rev. Stat. § 14-5-206(a), Colorado may initiate a request for interstate enforcement.  Additionally, a Colorado

court with continuing jurisdiction over a support order may act as a responding court so as to enforce the order. *Id.* at § 14-5-206(b).

Georgia law allows for a support order issued by a tribunal of another state to be registered and enforced in Georgia. *See* Ga. Code Ann. § 19-11-160. *See also Sussman v. Sussman*, 301 Ga. App. 397, 399 (2009) (enforcing law of state that issued support order). The Georgia legislature has defined a "support order" as:

> a judgment, decree, or order, whether temporary, final, or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, or reimbursement and may include related costs and fees, interest, income withholding, attorney's fees, and other relief.

Ga. Code Ann. § 19-11-101(21). Pursuant to Ga. Code Ann. § 19-11-163(a), the law of the state that issued the child support order "governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order." *See Owens v. Department of Human Resources*, 255 Ga. App. 678, 679 (2002). "If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law." Ga. Code Ann. § 19-11-165(b).

Once it is determined that an order is controlling, and a jurisdiction has continuing enforcement authority, the support order can be modified by another state only if the person seeking enforcement registers the order to be modified in that state. *See* Ga. Code Ann. § 19-11-172.[5] Georgia, the registering state here, allows modification only if all of the parties reside in Georgia and the child no longer resides in the issuing state. *See* Ga. Code Ann. § 19-11-172. If section 19-11-172 does not apply, Georgia will authorize modification only upon petition and

---

[5] The Colorado statutes governing modification are codified as Colo. Rev. Stat. §§ 14-5-609, 611.

under the following circumstances: neither the child, the obligee who is an individual, nor obligor resides in the issuing state; the petitioner for modification is a nonresident of Georgia; and a Georgia court has personal jurisdiction over the respondent; **or** the child lives in Georgia or is otherwise subject to personal jurisdiction in Georgia, and all parties who are individuals have consented on the record in a court in the issuing state to allow a Georgia court to modify the support order and assume continuing, exclusive jurisdiction  Ga. Code Ann. § 19-11-170(a)-(b).

## II.    The Motions to Dismiss

Plaintiff asserts that "Defendant Anderson, as the 'Issuing Official,' ordered the [Social Security Administration] to begin garnishing [his Social Security Income] at $500.00 per month to satisfy a debt he no longer owed," and in so doing, violated his Fourth Amendment right to be free from an unlawful search and seizure and violated his Fourteenth Amendment right to due process.  [#51 at ¶¶ 32, 35].  Plaintiff also asserts one claim as to the State Defendants based on their alleged failure to adequately train and supervise "all agencies and employees" under their authority.  [#51 at ¶¶ 46, 47, 48].    Defendant Anderson argues that she properly issued the garnishment and Plaintiff has no legal basis for relying on the representations of the Georgia DCSS that he had fulfilled his obligation.  [#57 at 9].[6]  The State Defendants argue that Plaintiff has impermissibly "lumped together" all Defendants in alleging wrongdoing, the allegations do not support a due process claim, supervisory liability alone is not actionable under § 1983, and the allegations cannot support a "failure to train" theory.  All Defendants assert entitlement to qualified immunity.

---

[6] Defendant Anderson further argues that Plaintiff has made judicial admissions that defeat certain of his claims and the applicable statute of limitations bars any claims founded on events that occurred prior to April 7, 2012. *See* [#57].

A.      **Propriety of the Garnishment**

The court first considers the propriety of the garnishment, because Plaintiff cannot state a cognizable constitutional violation unless he first identifies a property interest of which he has been deprived.   Plaintiff concedes that his ex-wife received an order of support against him in Colorado; and does not allege that the Colorado Order was defective or otherwise unenforceable. [#51, #58, #59].   Plaintiff further alleges that Colorado CSED filed, through the UIFSA, a Complaint for Enforcement of Foreign Order with the Georgia Department of Human Resources in the Superior Court of Paulding County, Georgia, and that he subsequently agreed to a Consent Order.  [#51 at ¶ 15; #47-3 at 4, 6].  Plaintiff apparently failed thereafter to comply with the child support obligations because Colorado CSED again, through UIFSA, pursued enforcement of the Colorado Order in Paulding County Superior Court, which resulted in the issuance of the Georgia Order.  [#51 at ¶ 16; #47-3 at 8].  The Georgia Order recognized that the Colorado Order was controlling.   *See* [#47-3 at 8].   Paulding County Superior Court further determined that Plaintiff had satisfied his obligation under the Colorado Order because one child had reached the age of majority and the other child had emancipated herself; but that pursuant to the controlling Colorado Order, Plaintiff owed $76,049.77 in arrears as of September 30, 2000.  [#51 at ¶¶ 17, 18; #47-3 at 8-10].  Plaintiff does not contend that he, or anyone else, petitioned to modify the controlling order, or that the requirements set forth in Ga. Code Ann. §§ 19-11-170, 172 would have been satisfied such that modification would have been possible.  [#51, #58, #59].

Instead, Plaintiff asserts that his child support obligation had been paid in full at the time Defendant Anderson requested garnishment of his Social Security Income, and argues in response that "[n]either Defendant Anderson nor the other defendants to this action have shown

or even brought evidence suggesting that any of them, their predecessors, peers, assigns or any other entity involved in any of their respective agencies challenged either of the Georgia court's calculations of arrearage." [#59 at 3].   Mr. Laurienti's arguments, however, are misplaced and do not persuade this court that he has stated a cognizable constitutional violation.

First, Mr. Laurienti's assertion that Defendants factually failed to challenge either of the Georgia court's calculation of arrearage is not properly before this court.   This statement is not contained in the allegations as pled in the operative Second Amended Complaint.   [#51].   In addition, parties may not amend their pleadings through arguments made in response to a motion to dismiss. *See In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004).   Second, accepting as true Mr. Laurienti's factual assertion that Defendants failed to challenge the Georgia court's calculation of arrearage, Colorado as the issuing state has no legal obligation to seek any type of clarification from Georgia, the state in which the order was registered and enforced, merely because Mr. Laurienti's residence is in Georgia—and Mr. Laurienti cites no authority to the contrary.   Nor, as Defendant Anderson asserts, is there any allegation in the Second Amended Complaint that Mr. Laurienti petitioned for modification, or that there was consent in Colorado to modification.   [#57 at 12].

It is clear from the Colorado Order, the Georgia Order, and the Administrative Review that Plaintiff's outstanding child support had not been satisfied in September 2012, when Plaintiff ceased making payments on the arrearage.   [#1-3].   Indeed, even as of June 19, 2013, when the Mesa County Department of Human Services completed its Administrative Review, Mr. Laurienti still owed a balance of $351.74.   [#1-3].   That balance was due and owing, but ultimately waived by Ms. Kampf.   [*Id.*].

Pursuant to the Consent Order, if Plaintiff had made a $500 payment every month beginning in February 1997, he would have satisfied his obligation in approximately twelve years and nine months, or by October 2009. [#51 at ¶ 15; #47-3 at 6]. Although not specified by any Party, it is plain from the operative pleading [#51] and exhibits identified as central to that pleading [#47-3] that Plaintiff did not make uninterrupted payments. Otherwise, Colorado CSED would not have pursued enforcement of the Colorado Order a second time. Pursuant to the Georgia Order, Plaintiff had remitted $1,231.18, or approximately two and a half payments, in the three years and nine months that had elapsed since the Consent Order. *See* [#51 at ¶¶ 17, 18; #47-3 at 8]. According to the calculations within the Georgia Order, if Plaintiff made a $500 payment every month beginning in November 2000, he would have satisfied his obligation in approximately twelve years and seven months, or by June 2013. *See* [#47-3 at 9 (instructing that "[Mr. Laurienti] may purge himself of said contempt by paying the amount of $76,049.77 as of September 30, 2000, at the rate of $500.00 per month, effective November 1, 2000")]. Finally, the Administrative Review that Plaintiff requested informed him that as of May 29, 2002, he owed $63,883.29. [#47-3 at 56-59]. Therefore, if he remitted monthly payments of $500.00, he would pay that amount in full in approximately ten years and six months, or by December 2012.

By his own admission, Plaintiff stopped making payments after August 2012. [#51 at ¶¶ 20, 21]. Notably, Plaintiff does not allege that he remitted monthly payments in excess of $500.00 beginning November 1, 2000, such that he satisfied his obligation prior to June 2013; he pleads only that the Georgia DCSS reported that he had paid his obligation in full. [#51 at ¶¶ 21,

22].[7]   Indeed, he acknowledges that Defendant Anderson, acting on behalf of Mesa County Child

Support Enforcement Unit, "continued to pursue him concerning allegedly due child support."

[#51 at ¶ 22].   Despite the fact that Colorado, not Georgia, was the issuing state, and that under

the Georgia Order Plaintiff was on notice that he would owe child support through June 2013 if

he remitted monthly payments of $500.00 with no disruption, and would owe child support

through December 2012 under the Administrative Review if he remitted monthly payments of

$500.00 with no disruption, Plaintiff chose to accept, without investigation, the report of the

Georgia DCSS that he had fulfilled his obligation in August 2012, which he knew or should have

known to be a blatant discrepancy.[8]   Plaintiff offers no legal support for finding that a clerical

error by Georgia DCSS would supersede the Colorado Order, as enforced by the Georgia Order,

and the Tenth Circuit and other courts have rejected such a conclusion.   *See e.g.*, *Hancock v.

State of Utah*, 176 F.3d 488 (10th Cir. 1999); *Roberts v. Nicholas*, Civil No. WDQ-04-2039,

2007 WL 5145353 (D. Md. Jan. 26, 2007) (dismissing plaintiff's § 1983 claims upon finding that

the controlling child support order remained in effect, and "Defendants are entitled to every legal

---

[7] Plaintiff offered an incomplete copy of Denise Kampf's June 19, 2013 letter in support of his Second Amended Complaint, and Defendant Anderson attached the complete copy to her Motion to Dismiss.   *Compare* [#47-3 at 75] *with* [#57-1 1-24].   The complete copy includes "Affidavits of Arrears" from 2002 through 2013 demonstrating that Plaintiff still owed under his obligation as of August 2012.   *See* [#57-1 at 6-7].   This court considers this attachment as central to Plaintiff's allegations and declines to convert the Motion to Dismiss into one for summary judgment.   *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (holding district courts have discretion in deciding whether to consider materials appended to a motion to dismiss that are central to a plaintiff's claim without converting the motion) (collecting cases).

[8] Plaintiff's argument that Colorado failed to timely contest Georgia's calculation of arrearage is simply irrelevant.   *See* [#59 at 4-9].   There is no apparent dispute with the calculation of arrearage in the Consent Order or in the Georgia Order.   Plaintiff was on notice pursuant to at least two court orders that his obligation continued past August 2012 if he chose to remit payments of only $500 each month.

means available to enforce plaintiff's obligations under it, including the collection efforts

plaintiff mischaracterizes as violations of his civil rights:  filing a lien on his federal tax returns;

reporting his arrearages to national credit bureaus; sending him collection notices; attempting to

withhold his wages; and notifying him of possible criminal liability under the Child Support

Recovery Act.  Such alleged lawful collection measures on child support arrearages do not

amount to constitutional violations.")

Section 659 of Title 42 of the United States Code specifically provides for the

withholding of income due from or payable by the United States to enforce an individual's legal

obligation to remit child support.  42 U.S.C. § 659(a).  *See United States v. Morton*, 467 U.S.

822, 826–27, 104 S.Ct. 2769, 2772, 81 L.Ed.2d 680 (1984).  *See also Maley v. Kansas, SRS*, 509

F. App'x 709, 710 (10th Cir. 2013) (affirming dismissal of *pro se* complaint pursuant to 28

U.S.C. § 1915(e)(2)(B) and noting that plaintiff's argument contesting garnishment of his social

security disability benefits by the state child support collection division was meritless

under 42 U.S.C. § 659(a)); *but see Sykes v. Bank of America*, 723 F.3d 399 (2d Cir. 2013) (per

curiam) (holding social security income benefits "are not attachable pursuant to the child support

exception in § 659(a) because they do not constitute monies received in remuneration for

employment") (citations omitted).[9]

_____

[9] Mr. Laurienti does not plead whether the garnishment affected social security income benefits
established under subchapter XVI or subchapter II of the Social Security Act, *see, e.g.,* [#51 at ¶
23; #47-3 at 16]; although his attorney refers to the garnishment in a letter as "infringing on
[Plaintiff's] right to receive the income as a senior citizen of the United States."  [#47-3 at 20].
Plaintiff does not argue that § 659(a) is not applicable, and the court is not otherwise persuaded
to break with the precedent of this Circuit.  *See Maley*, 509 F. App'x at 710; *see also DeTienne v.
DeTienne*, 815 F.Supp. 394 (D. Kan. 1993) (discussing scope of 42 U.S.C. § 659(a) in
determining liability for government's failure to withhold funds pursuant to garnishment order).

In April 2013, at the time Plaintiff's first social security income payment was garnished, Plaintiff still owed child support and he had not made any payments for seven months. Even in construing the allegations of the Second Amended Complaint in a light most favorable to Plaintiff, this court concludes that the garnishment was not improper.[10] If the garnishment was not improper, there can be no violation of Plaintiff's Fourth or Fourteenth Amendment rights.[11] *See Roberts*, 2007 WL 5145353, at *5.

### B. Qualified Immunity

However, even assuming the garnishment was not proper, this court further finds that Defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate

---

[10] Plaintiff appears to suggest as a separate basis that the garnishment was improper because Colorado had ceded enforcement authority to Georgia. *See* [#51 at ¶¶ 38-41]. For support he cites the Federal Office of Child Support Enforcement regulations, which instruct that "pursuing dual enforcement remedies could lead to confusion on the part of the employer, the obligor and obligee, and the IV-D agencies. If a State pursues direct withholding after referring a case to another State for enforcement, it must coordinate with the responding State and notify that State of any direct withholding and collections from the direct withholding, in accordance with 45 C.F.R. § 303.7(b)(5)." [#51 at ¶ 38]. First, Plaintiff does not allege that both Georgia and Colorado pursued "dual enforcement remedies" in 2013. Indeed, he emphasizes that Georgia DCSS had closed his account in August 2012; therefore, Defendant Anderson's request that the Social Security Administration garnish Plaintiff's benefits was the sole pursuit of an enforcement remedy at that time. There is no indication that Plaintiff was ever subject to dual enforcement remedies. Furthermore, Plaintiff does not allege that Colorado officials failed to communicate or otherwise coordinate with Georgia officials regarding the garnishment. Finally, Plaintiff concedes that "federal regulations do not create statutory rights," [#58 at 9], and "the OCSE Regulations do not create a cause of action." [#59 at 13].

[11] To the extent Plaintiff claims a due process violation resulting from the collection letters generated by Colorado CSED specifying inaccurate figures of arrearage and a letter from the Mesa County Child Support Enforcement Unit that the debt would be reported to a credit reporting agency if left unresolved, *see, e.g.,* [#58 at 12, #47-3 at 73], he does not identify a protected property interest in receiving accurate notices of child support arrearage and he does not allege that the debt was ever reported or that he suffered adverse consequences as a result of those reports. [#51].

clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quotation omitted)). Faced with a qualified immunity defense, I must consider two elements: whether a constitutional violation occurred; and whether the violated right was "clearly established" at the time of the violation. *Id.* (citation omitted). The court has discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson*, 129 S.Ct. at 818).

Ordinarily, a law is clearly established if there is a Supreme Court or Tenth Circuit decision on point, or if the clearly established weight of authority from other courts has "found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya,* 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quotations and alteration omitted). *See Casey v. City of Fed. Heights,* 509 F.3d 1278, 1284 (10th Cir. 2007) ("[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.") (quotations omitted).

Even if the garnishment of Plaintiff's Social Security Income to satisfy child support payments was not authorized under 42 U.S.C. § 659(a), any law reflecting that section's inapplicability was not clearly established by the Supreme Court, the Tenth Circuit, or the weight

of authority in other courts as of April 2013, when Plantiff's first social security payment was garnished. Nor was any right to be free of errors on correspondence related to child support calculations a clearly established right as of April 2013. Accordingly, this element of the qualified immunity analysis is not satisfied, and this court need not independently determine the first prong of the analysis. Defendants are also entitled to dismissal based on their invocation of qualified immunity.

### C.   Personal Participation of State Defendants

Finally, and notwithstanding the above conclusions, this court concludes that Plaintiff has not sufficiently pled personal participation as to the State Defendants in any underlying constitutional violations.[12] Plaintiff alleges that the State Defendants maintained inaccurate records and "harassed [him] and attempted to collect undue, outrageous, and unexplainable amounts of allegedly owed debts," [#51 at ¶¶ 52, 60], and for support refers to the annual letters the Unit sent to Mr. Laurienti from 2002 until 2012. [*Id.* at ¶¶ 57, 58, 60].

---

[12] The court notes that Plaintiff does not plead with precision the relationship between the State Defendants' divisions and departments and Mesa County Child Support Enforcement Unit, but claims that Defendants Bicha, Nesbitt, and St. James have "a duty to supervise and train all agencies and employees" under their authority. [#51 at ¶¶ 46, 47, 48]. Specifically, Defendant Bicha has a duty "to ensure that the divisions of DHS, its employees, and any agency of any political subdivision of the State of Colorado… operate and function in accordance with federal and state law; Defendant Nesbitt has a duty "to ensure that the state's agencies, employees thereof, and any agency of any political subdivisions of the State of Colorado… operate and function in accordance with federal and state law; and Defendant St. James has a duty "to ensure that the Colorado CSED, its employees, and any agency of any political subdivision of the State of Colorado… operate and function in accordance with federal and state law." [*Id.*] Mindful of its obligation to view all well-pleaded factual allegations in the light most favorable to Plaintiff, *Casanova*, 595 F.3d at 1124, and with acknowledgement that the State Defendants have not raised the argument of their relationship with regard to Mesa County CSEU, the court turns to whether Plaintiff has alleged the State Defendants' personal participation in the constitutional violations.

Section 1983 liability requires a constitutional violation, first and foremost.  Although not specifically asserted by Plaintiff, the court infers that the constitutional violations at issue here arise under the Fourth and Fourteenth Amendments, based on Defendant Anderson's alleged actions.  *See* [#51 at ¶¶ 31-33,¶¶ 35-44, ¶¶ 46-48 ("[State Defendants were] at all times relevant to at least Count I of this complaint")].   Even assuming Plaintiff has pled a constitutional violation (which he has not), he has not alleged the requisite personal participation on behalf of the State Defendants.

A plaintiff "must allege an affirmative link between the alleged constitutional violation and the specific individual's involvement in that violation." *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).  Over time, the "affirmative link" language has evolved to require three elements:  (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).  To establish personal involvement, the plaintiff must show that the supervisor actively participated in or acquiesced to the constitutional violation. *Id.*  For instance, the following could each constitute sufficient personal involvement: a defendant-supervisor's exercise of control or direction over the constitutional violation; failure to supervise; knowledge of the constitutional violation and acquiescence to it; or promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights. *Id.*

Where personal participation is lacking, the plaintiff must allege the official acted knowingly or with deliberate indifference in permitting the violative conduct.  Then, the plaintiff has to demonstrate that there was a causal connection and a culpable state of mind, *i.e.*, "the

defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* at 1195-96.

Plaintiff has not asserted any such allegations with respect to the State Defendants. Plaintiff identifies no specific policy or practice implemented by the State Defendants that resulted in any alleged constitutional violations. The letters sent to Plaintiff by Mesa County Child Support Enforcement Unit were either unsigned, or signed by Defendant Anderson or non-parties. *See* [#47-3 at 15, 52, 59-72, 74]. Plaintiff does not allege that the State Defendants were responsible for the inaccurate book keeping, nor does he describe how the State Defendants trained or failed to train the people who were responsible for maintaining records with regard to Mr. Laurienti's child support or mailing notices of arrearage. Additionally, Plaintiff has not alleged that the State Defendants acted with the requisite *mens rea* in how they trained, or failed to train, their staff in record keeping and notifying parents of outstanding support obligations. Plaintiff has not demonstrated an affirmative link between the asserted constitutional violations and the State Defendants, and therefore could not hold the State Defendants liable for any such violation.

Because of the court's foregoing conclusions, it need not reach the additional arguments forwarded by the Defendants in their respective Motions to Dismiss.

## CONCLUSION

For the forgoing reasons, **IT IS ORDERED**:

1. The Motion to Dismiss Second Amended Complaint [#56] is **GRANTED**;

2. The Motion for Dismissal of the Second Amended Complaint Pursuant to F.R.Civ.P. 12(b)(1) and F.R.Civ.P. 12(b)(6) [#57] is **GRANTED**; and

3.   The Second Amended Complaint is **DISMISSED,** with each party to pay her and his

own costs.

DATED: February 9, 2016                         BY THE COURT:


                                                s/Nina Y. Wang
                                                United States Magistrate Judge